Christine Anderson Ferraris, #031414
**A. FERRARIS LAW, P.L.L.C.**
333 N. Wilmot, Suite 340
Tucson, AZ 85711
Tel.:(520) 618-5339
Email: cferraris@aferrarislaw.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio V. Fierros,<br><br>        Plaintiff,<br><br>v.<br><br>Quebedeaux Buick-GMC, Inc.; General Motors, LLC; U.S. Bank National Association,<br><br>        Defendants. | Case No.:<br><br>**CIVIL COMPLAINT**<br><br>**CONSUMER FRAUD; BREACH OF WARRANTY; BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; LEMON LAW; RESCISSION, FEDERAL TRADE COMMISSION'S RULE ON PRESERVATION OF CONSUMER CLAIMS AND DEFENSES, 16 C.F.R. § 433**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. The Plaintiff, Sergio V. Fierros, through A. Ferraris Law, the undersigned counsel, files this Complaint to sue Defendants Quebedeaux Buick-GMC, Inc., General Motors, LLC, and U.S. Bank National Association.

1

**PARTIES, JURISDICTION, & VENUE**

2. Plaintiff Sergio V. Fierros ("Mr. Fierros" or "Plaintiff") is a resident of Pima County, Arizona.

3. Defendant Quebedeaux Buick-GMC, Inc. ("Quebedeaux Buick-GMC") is an Arizona domiciled for-profit corporation with a principal place of business in Pima County, Arizona selling, financing, and servicing (repairing and providing maintenance for) automobiles.

4. Defendant General Motors, LLC also known as GMC ("General Motors"), is a Delaware domiciled for-profit corporation registered with the State of Arizona as a foreign entity, represents it is in the business of manufacturing, selling motor vehicles.

5. Defendant U.S. Bank National Association ("US Bank") is a foreign for-profit corporation, in the business of auto finance within the State of Arizona, US Bank is the assignee under the retail installment contract for the auto purchase money loan in this matter.

6. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 2310 (d)(3)(B).

7. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 (b)(2), in that the unlawful conduct alleged occurred within the District of Arizona.

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

8. On May 15, 2019, according to Mr. Fierros, he purchased a new 2019 Sierra GMC, VIN 1GTU9FEL0KZ290140 ("the Sierra") from Defendant Quebedeaux Buick-GMC in Tucson Arizona, for a cash price of $67,634.13 and a total sale price of $86,121.60. (See Retail Installment Agreement attached as Exhibit A, Front and Back).

9. According to the Retail Installment Agreement issued by Quebedeaux Buick-GMC, Quebedeaux Buick-GMC charged Mr. Fierros the following fees:

- DEALER DOCUMENTARY FEE     $399.00
- GAP                         $499.00
- FINANCE CHARGES            $16,560.32

10. Quebedeaux Buick-GMC assigned the finance contract to Defendant US Bank.

11. Quebedeaux Buick-GMC installs aftermarket equipment in vehicles sold as new.

12. Quebedeaux did not inform Mr. Fierros it had installed equipment prior to the sale of the Sierra to Mr. Fierros.

13. A few months after purchase in September 2019 while having a tire replaced, Quebedeaux Buick-GMC informed Mr. Fierros the Sierra was subject to a software update and advised Mr. Fierros to have the update installed.

14. Shortly after Quebedeaux Buick-GMC performed the software update repair, the Sierra's brakes failed.

15. Mr. Fierros brought the Sierra back to Quebedeaux Buick-GMC and informed Quebedeaux Buick-GMC that the brakes failed while he was driving.

16. Quebedeaux Buick-GMC kept the Sierra for about 20 days and drove the Sierra 300 miles to attempt to repair.

17. Quebedeaux Buick-GMC delivered the Sierra back to Mr. Fierros and after a few weeks the Sierra's brakes failed again causing a collision with another vehicle.

18. The Sierra was again towed to Quebedeaux Buick-GMC where it remained for about five months.

19. To mitigate his losses, Mr. Fierros requested a substitute vehicle to drive and Quebedeaux Buick-GMC provided a near equivalent vehicle to Mr. Fierros.

20. To further mitigate his harm, on or about January 7, 2020, Mr. Fierros, through counsel, sent a letter to inform the Sierra's purchase loan assignee, U.S. Bank, of the Sierra's unsafe and defective history.

21. Mr. Fierros further informed Quebedeaux and US Bank he was going to mitigate loss by stopping payment of the loan as allowed under A.R.S. § 47-2717. Under A.R.S. § 47-2717, a buyer, on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

22. Quebedeaux Buick-GMC informed Mr. Fierros on multiple occasions that General Motors would replace the defective Sierra but to date

General Motors, LLC has failed to do so.

23. More recently, General Motors, LLC's, agent, ESIS, whose representative inspected the Sierra has asserted that Quebedeaux Buick-GMC is responsible for the Sierra's brake failure because Quebedeaux Buick-GMC installed an after-market part onto the Sierra.

24. Mr. Fierros is unaware of any after-market part installation by Quebedeaux Buick-GMC and the purchase and finance documents do not indicate any third-party market equipment was purchased or installed.

25. To date the GMC Sierra 2019 has had several safety recalls two of which according to General Motors documents filed with the National Highway Traffic Safety Administration have to deal with software failures and brake defects.

26. Consumers around the United States who own a GMC Sierra 2019 have filed complaints with National Highway Traffic Safety Administration stating that they had similar brake failures as experienced by Mr. Fierros.

27. Mr. Fierros and his family have incurred significant harm by the Defendants' conduct, such as payments made towards a vehicle that that is unsafe to drive, significant physical and emotional stress by continued failure of the brakes while driving and the extended duration waiting for repair or replacement and General Motors's refusal to replace the Sierra, US Bank's negative and incomplete reporting with credit reporting agencies, causing negative impact on Mr. Fierros' credit history, and a loss of use of funds and financing which has caused Mr. Fierros and his family tremendous financial hardship.

**CLAIM I - ARIZONA CONSUMER FRAUD ACT**
**A.R.S. § 44-1522 to A.R.S. § 44-1534**
**As To Defendants Quebedeaux Buick-GMC, Inc.;**
**General Motors, LLC; U.S. Bank National Association**

28. Plaintiff incorporates the foregoing paragraphs by reference as if fully set out herein.

29. The Arizona Consumer Fraud Act protects consumers against unfair and deceptive conduct.

> "The term 'deceptive' has been interpreted to include representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible."

*Ward v. Fireman's Fund Ins. Companies*, 731 P.2d 106, 112, 152 Ariz. 211, 217 (Ariz. App. 1986).

30. Elements to pursue a lawsuit for violation of the Consumer Fraud Act ("Act") are a false promise or a misrepresentation made in connection with the sale or advertisement of merchandise and the consumer's consequent and proximate injury. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).

31. Misrepresentation, as defined under the Act, may be verbal or written to support a violation of the Consumer Fraud Act. A.R.S. § 44-1521 (7) defines "Sale", § 44-1521 (5) defines "Merchandise," and A.R.S. § 44-1521 (1) defines "Advertisement." Each term comes with a broad definition therefore typical usage does not control each term's interpretation under the Act. *Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 68 ¶ ¶34-43, 366 P.3d 117, 127-129 (Ct.

App. 2016). The Court of Appeals in *Villegas,* considered the Act's definitions of "sale," "advertisement," and "merchandise" relative to Defendant Transamerica Financial Services loan agreement and its advertising, found that a loan, though not typically considered merchandise, was merchandise under the Act's broad language, and as such, the loan transaction was a sale and advertisement of merchandise under the Act."

**Quebedeaux Buick-GMC, Inc.**

32. Quebedeaux Buick-GMC sold a vehicle, the Sierra, to Mr. Fierros.

33. Quebedeaux Buick-GMC misrepresented by its written and verbal advertisements the condition of the Sierra.

34. Quebedeaux Buick-GMC concealed it had installed after-market installation and alterations to the Sierra.

35. Quebedeaux Buick-GMC's misrepresentations relative to the attempted repairs of the Sierra that did not repair the brake failure defects.

**General Motors, LLC**

36. General Motors misrepresented by its written and verbal advertisements the condition of the Sierra.

37. General Motors was aware of the Sierra's safety defects prior to Mr. Fierros' purchase of the Sierra.

38. General Motors concealed and failed to disclose the Sierra's safety defects in a timely manner prior to and after the purchase of the Sierra.

39. General Motors concealed known information relative to its

inspection of the Sierra and represented it would share the inspection but has failed to do so.

**U.S. Bank National Association**

40. US Bank misrepresented the status of the loan obligation to credit reporting agencies, such conduct was in connection with Mr. Fierros' purchase of the Sierra.

41. US Bank has repeatedly harassed and misrepresented Mr. Fierros legal rights under the retail installment contract.

42. Under the Arizona Consumer Fraud Act, Plaintiff is entitled to recover from each Defendant actual damages, punitive damages. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326 (1986). Punitive damages are appropriate where a defendant's wrongful conduct was guided by willful or wanton disregard of the interests of others. *Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 180, 883 P.2d 407, 41 (App. 1993). An act is willful where the resulting injury is intentional or the natural or probable consequence of the act. *Conchin v. El Paso & S.W.R. Co.,* 13 Ariz. 259, 264, 108 P. 260, 262 (Ariz. Terr. 1910). Courts have justified awarding punitive damages to help consumers enforce consumer protections by helping to reimburse the cost of litigation. *Linthicum* at 330.

**CLAIM II - NEW MOTOR VEHICLE WARRANTY**
**"LEMON LAW" CLAIM**
**ARIZ. REV. STAT. §§ 44-1261 to 44-1263**
**As To General Motors LLC**

43. Plaintiff incorporates the foregoing paragraphs by reference as if fully set out herein.

44. Plaintiff is a "consumer" as defined by the Lemon Law, A.R.S. § 44-1261 (A)(1).

45. Plaintiff hereby sues General Motors LLC (General Motors) under the Arizona Lemon Law, A.R.S. §§ 44-1261 to 44-1263.

46. The Sierra is a motor vehicle as defined by the Arizona Lemon Law, A.R.S. § 44-1261 (A)(2).

47. General Motors is a manufacturer covered by the Arizona Lemon Law.

48. General Motors provided with the Sierra an express warranty covered by the Arizona Lemon Law.

49. The Sierra does not conform to all applicable warranties—specifically, General Motors is unable to cure the defects with respect to the Sierra.

50. Plaintiff reported the nonconformities to General Motors directly and via its warranty agent, Defendant Quebedeaux Buick-GMC, an authorized General Motors dealer during the term of the express warranty.

51. General Motors by its warranty agent Quebedeaux Buick-GMC failed to make the repairs that are necessary to conform the Sierra to such express warranties after more than a reasonable number of attempts.

52. The nonconformities substantially impair the use and value of the Sierra to Plaintiff.

53. General Motors is obligated to accept return of the Sierra and refund the full purchase price, including all collateral charges, less a reasonable allowance for use.

54. Plaintiff has suffered damages as a result of General Motors and is entitled to recover his damages in an amount to be determined at trial.

55. Pursuant to A.R.S. § 44-1265 (B), Plaintiff is also entitled to recover his reasonable attorney's fees and costs.

### BREACH OF IMPLIED WARRANTIES
### A.R.S. §§ 44-1267, 47-2315
### As to Quebedeaux Buick-GMC, Inc. and General Motors LLC

56. Plaintiff incorporates by reference the foregoing paragraphs as if fully set out herein.

57. The Uniform Commercial Code as adopted by the State of Arizona provides for an implied warranty of merchantability for the sale of used motor vehicles pursuant to A.R.S. § 44-1267.

58. Under A.R.S. § 44-1267, a motor vehicle must function in a safe condition as provided in title 28, chapter 3, article 16 and be substantially free of any defect that significantly limits the use of the motor vehicle for the ordinary purpose of transportation on any public highway.

59. By A.R.S. § 47-2315, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified as required under A.R.S. 47-2316 an

implied warranty that the goods shall be fit for such purpose.

60. Here, Defendant Quebedeaux Buick-GMC and General Motors failed to select and furnish suitable goods and did not properly exclude or modify such implied warranty and as described above failed to furnish suitable goods to the Plaintiff.

61. Failure to honor these implied warranties that attached to the sale, combined with the affirmations of facts and promises relative to the warranties became part of the basis of the Agreement.

62. Defendant Quebedeaux Buick-GMC and General Motors' respective representations such as those described herein create additional express warranties that the Sierra shall conform to the affirmation, promise and representation made, such as that it was a like a new vehicle to be driven on public highways.

63. As described, the Sierra did not conform to express and implied warranties of merchantability, and fitness for a particular purpose.

64. As a result of Defendant Quebedeaux Buick-GMC and General Motors' violation of Arizona implied warranty law as described above, Plaintiff was harmed in an amount not less than $50,000.

65. Because of Defendants' violations of implied warranty statutes, Plaintiff is entitled to recover from each Defendant actual damages, punitive damages, and attorneys' fees and costs.

## MAGNUSON MOSS WARRANTY ACT
### Federal Consumer Product Warranties Act, 15 U.S.C. § 2301
### As to Quebedeaux Buick-GMC, Inc. and General Motors LLC

66. The Magnuson Moss Warranty Act, Federal Consumer Product Warranties Act, 15 U.S.C. § 2301, et seq., ("MMWA") provides additional protections to consumers given under state warranty statutes.

67. The Magnuson-Moss Warranty Act, a federal statute that supplements actions and remedies for enforcing state warranty laws, also provides that a consumer can seek to recover reasonable attorneys' fees and costs, where a consumer proves that a deceptive warranty was made or where any person fails to comply with the Act's provisions.

68. Breach of Arizona warranty statutes, in turn, violates the MMWA, allowing the Plaintiff to recover losses due to violation of warranty statutes and MMWA pursuant to 15 U.S.C. § 2310(d)(1) and 15 U.S.C. § 2310(d)(2) of the MMWA.

69. As a result of Defendant Quebedeaux Buick-GMC and General Motors' violation of Arizona implied warranty law as described above, Plaintiff was harmed in an amount not less than $50,000.

70. Additionally, under the MMWA for Defendants' violations of Arizona implied warranty statutes the Plaintiff is entitled to recover actual damages, and attorneys' fees and costs as well as injunctive relief.

## NEGLIGENT MISREPRESENTATION
## Quebedeaux Buick-GMC, Inc.

71. Plaintiff incorporates by reference the foregoing paragraphs as if fully set out herein.

72. Arizona recognizes the law of negligent misrepresentation where information is supplied with a commercial transaction. *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 154 Ariz. 417, 423 (Ct. App. 1991).

73. A claim for negligent misrepresentation arises when the provider, usually a seller, has a pecuniary interest and information is provided in the course of seller's business. *Id.* A seller of merchandise must exercise reasonable care and competence when a seller provides information to a purchaser intending for the purchaser to rely on the information found to be false, causing purchaser to incur damages when the false information was justifiably relied upon. *Id.* The false information can be a misrepresentation, or an omission of fact. *McAlister v. Citibank (Arizona),* 171 Ariz. 2017, 215 (Ct. App. 1992).

**Quebedeaux Buick-GMC, Inc.**

74. Quebedeaux Buick-GMC negligently sold a vehicle, the Sierra, to Mr. Fierros.

75. Quebedeaux Buick-GMC negligently misrepresented by its written and verbal advertisements the condition of the Sierra.

76. Quebedeaux Buick-GMC negligently concealed it had installed after-market installation and alterations to the Sierra.

77. Quebedeaux Buick-GMC's negligent misrepresentations relative to the attempted repairs of the Sierra that did not repair the brake failure defects.

**General Motors LLC**

78. General Motors negligently misrepresented by its written and verbal advertisements the condition of the Sierra.

79. General Motors was aware of the Sierra's safety defects prior to Mr. Fierros' purchase of the Sierra.

80. General Motors negligently concealed and failed to disclose the Sierra's safety defects in a timely manner prior to and after the purchase of the Sierra.

81. General Motors negligently concealed known information relative to its inspection of the Sierra and negligently represented it would share the inspection but has failed to do so.

**U.S. Bank National Association**

82. US Bank negligently misrepresented the status of the loan obligation to credit reporting agencies, such conduct was in connection with Mr. Fierros' purchase of the Sierra.

83. US Bank has repeatedly negligently harassed and negligently misrepresented Mr. Fierros' legal rights under the retail installment contract.

84. Consequential and out-of-pocket losses are recoverable under a negligent misrepresentation claim. Recoverable loss is all damage the Plaintiff incurred, including the difference in the value of what was received in the

1 transaction and the purchase price, and pecuniary loss suffered as a result of
2 reliance on the misrepresentation (s). *Standard Chtd. PLC v. Price Waterhouse,*
3 190 Ariz. 6, 35 (Ct. App. 1996).

4     85. Mr. Fierros incurred consequential and out-of-pocket losses due to
5 Defendants' negligent misrepresentations, and seeks to recover all the pecuniary
6 loss and other harm he incurred as a result of reliance on Defendants'
7 misrepresentations.

**NEW MOTOR VEHICLE WARRANTY "LEMON LAW" CLAIM**
**A.R.S. § 44-1261 to § 44-1263**
**As To Quebedeaux Buick-GMC, Inc. and General Motors LLC**

10     86. Plaintiff incorporates by reference the foregoing paragraphs as if
11 fully set out herein.

12     87. Plaintiff hereby sues Quebedeaux Buick-GMC and General Motors
13 LLC under the Arizona Lemon Law, A.R.S. §§ 44-1261 to 44-1261(A)(1).

14     88. Plaintiff is a "consumer" as defined by the Lemon Law, A.R.S. § 44-
15 1261(A)(1).

16     89. The Sierra is a motor vehicle as defined by the Lemon Law, A.R.S.
17 § 44-1261(A)(2).

18     90. Quebedeaux Buick-GMC and General Motors are manufacturers
19 covered by the Lemon Law.

20     91. Quebedeaux Buick-GMC and General Motors provided with the
21 Sierra an express warranty covered by the Lemon Law.

22     92. The Sierra does not conform to all applicable warranties –

1  specifically, Quebedeaux Buick-GMC and General Motors are unable to cure the
2  defects with respect to the Sierra.

3      93.     As a result of the above facts, Quebedeaux Buick-GMC and General
4  Motors breached their warranties with respect to the Sierra.

5      94.     Plaintiff reported the nonconformities to Quebedeaux Buick-GMC
6  and General Motors and their authorized dealers failed to make the repairs that
7  are necessary to conform the Sierra to such express warranties after more than a
8  reasonable number of attempts.

9      95.     The nonconformities substantially impair the use and value of the
10 Sierra to Plaintiff.

11     96.     Quebedeaux Buick-GMC and General Motors are obligated to
12 accept return of the Sierra and refund the full purchase price, including all
13 collateral charges, less a reasonable allowance for use.

14     97.     Plaintiff suffered damages as a result of Quebedeaux Buick-GMC,
15 General Motors and US Bank and is entitled to recover his damages in an amount
16 to be determined at trial.

17     98.     Pursuant to A.R.S. § 44-1265(B), Plaintiff is entitled to recover his
18 reasonable attorney's fees and costs.

19
**RESCISSION**
**As To Quebedeaux Buick-GMC, Inc. and**
20     **U.S. Bank National Association**

21     99.     Plaintiff incorporates by reference the foregoing paragraphs as if
22 fully set out herein.

100. Because Quebedeaux Buick-GMC violated Arizona law by employing fraud and violation of warranty statutes by which resulted in the sale of an unmerchantable and nonconforming vehicle since the day of delivery, the purchase agreement is voidable at the Plaintiff's option.

101. Plaintiff was reasonably induced by misrepresentations to accept the Sierra and did not discover the extent of defects and nonconformities until after purchase.

102. In Arizona, where fraud is part of a transaction, a party may cancel the contract and seek return of the purchase price paid, and also recover incidental and consequential damages incurred by seller's breach of the transaction's contract. *Mobile Home Sales Management, Inc. v. Brown,* 115 Ariz. 11, 13-14, 562 P.2d 1378, 1380-81 (Ct. App. 1977). Arizona Revised Statutes §§47-2714, 47-2715.

**FEDERAL TRADE COMMISSION'S RULE ON PRESERVATION OF CONSUMER CLAIMS AND DEFENSES, 16 C.F.R. § 433**
**As To U.S. Bank National Association**

103. Plaintiff incorporates by reference the foregoing paragraphs as if fully set out herein.

104. In accordance with the requirements the Federal Trade Commission's Rule on Preservation of Consumer Claims and Defenses, 16 C.F.R. § 433, the Retail Installment Contract which Quebedeaux Buick-GMC assigned to US Bank (Retail Installment Contract) provides in pertinent part:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT

17

AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

105. By the Retail Installment Contract provision Plaintiff asserts all claims and defenses he has against Quebedeaux Buick-GMC against US Bank.

106. As Plaintiff is entitled to damages, fees, costs or other equitable relief against Quebedeaux Buick-GMC, he requests all appropriate relief against US Bank.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sergio V. Fierros prays that this Court enter Judgment in his favor and against Quebedeaux Buick-GMC, General Motors LLC, and U.S. Bank National Association as follows:

A. An award of actual damages including any compensatory, incidental, or consequential damages commensurate with proof at trial for the acts complained of herein;

B. Appropriate injunctive relief finding that the Plaintiff can rescind the purchase agreement;

1        C.    For pre- and post-judgment interest on any amounts awarded herein at the maximum lawful rate from the date of its rendition until paid in full;

      D.    For costs, interest and actual reasonable attorneys' fees;

      E.    Any and all equitable relief and such other and further relief as this Court deems just and proper.

SUBMITTED this 5th day of June, 2020.

**A. FERRARIS LAW, P.L.L.C.**

*/s/ Christine Anderson Ferraris*
Christine Anderson Ferraris
*Attorney for Plaintiff*