**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sergio V Fierros,<br>Plaintiff,<br>v.<br>Quebedeaux Buick GMC Incorporated, et al.,<br>Defendants. | No. CV-20-00245-TUC-RM (MSA)<br>**REPORT AND RECOMMENDATION** |

This matter is on referral pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. Pending before the Court is Defendant U.S. Bank National Association's ("U.S. Bank") partial motion to dismiss the complaint. (Doc. 31.) The motion has been fully briefed. (Docs. 36, 39.) For the following reasons, the Court will recommend that the motion be granted in part.

## I. Factual Allegations

In May 2019, Plaintiff Sergio Fierros purchased a 2019 GMC Sierra from Defendant Quebedeaux Buick-GMC, Inc. ("Quebedeaux"), for a sales price of $86,121.60. (Doc. 27, ¶ 8.) Quebedeaux assigned the finance contract for the Sierra to U.S. Bank. (*Id.* ¶ 10.)

Shortly after a software update in September 2019, the Sierra's brakes failed. (*Id.* ¶¶ 13–14.) Quebedeaux attempted to repair the issue, but within a few weeks of returning the vehicle to Plaintiff, the Sierra's brakes failed again, causing an accident. (*Id.* ¶¶ 15–17.) Quebedeaux informed Plaintiff that the Sierra's manufacturer, Defendant General Motors, LLC, will replace the defective Sierra. (*Id.* ¶¶ 4, 30.) However, General Motors,

LLC denies responsibility and maintains that the Sierra's brake issues were caused by the installation of an after-market part by Quebedeaux. (*Id.* ¶ 31.)

To mitigate his losses, Plaintiff wrote a letter to U.S. Bank in January 2020, informing U.S. Bank that he was represented by an attorney, that the Sierra is defective, and that he would be stopping payment on the finance contract as a result of the defects. (*Id.* ¶¶ 20, 27.) Despite this correspondence, U.S. Bank began calling Plaintiff about the loan, threatening "negative credit reporting among other offensive comments." (*Id.* ¶ 21.) Plaintiff received multiple calls per day, even after his attorney notified U.S. Bank to cease the calls. (*Id.* ¶¶ 23, 25–26.) Plaintiff's brother, Miguel Cantua, also received multiple calls from U.S. Bank, although he is not a party to the finance contract. (*Id.* ¶ 24.) U.S. Bank's harassing conduct continued for several months. (*Id.* ¶ 26.)

At some point, U.S. Bank reported "negative and incomplete" information to credit reporting agencies regarding the status of the loan. (*Id.* ¶ 35.) As a result, Plaintiff was denied financing for a vehicle to replace the defective Sierra. (*Id.* ¶ 28.) Additionally, the "negative impact" on Plaintiff's credit has caused Plaintiff humiliation and embarrassment, and U.S. Bank's harassment has caused Plaintiff emotional distress. (*Id.* ¶ 35.)

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). It is satisfied if the claim is "plausible on its face," meaning there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556, 570).

A defendant may challenge the sufficiency of a complaint by filing a motion under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) may be "based on the lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)). In determining whether the plaintiff has stated a plausible claim, the court "must take all the factual allegations in the complaint as true," but it need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. Discussion[1]

U.S. Bank challenges three of Plaintiff's claims. In count one, Plaintiff alleges a claim under the Arizona Consumer Fraud Act. (Doc. 27, ¶¶ 52–59.) In count five, Plaintiff alleges a common-law claim for negligent misrepresentation. (*Id.* ¶¶ 99–103.) These claims are based on allegations that U.S. Bank furnished false information about Plaintiff's loan to credit reporting agencies and misrepresented the status of the loan in direct communications with Plaintiff. In count seven, Plaintiff alleges a common-law claim for intrusion upon seclusion. (*Id.* ¶¶ 117–22.) This claim is based on allegations that U.S. Bank made numerous offensive telephone calls to Plaintiff and his brother.

### A. Preemption

U.S. Bank argues that the Fair Credit Reporting Act ("FCRA") preempts Plaintiff's claims for consumer fraud and negligent misrepresentation. The Court agrees in part.

The FCRA contains two overlapping preemption provisions. The first provision, enacted in 1970, provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

---

[1] In his response, Plaintiff states that he may have a claim under the Telephone Consumer Protection Act of 1991. However, because he has not pleaded a claim under that law, it is not discussed in this report.

15 U.S.C. § 1681h(e). The second provision, added in 1996, provides: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." *Id.* § 1681t(b)(1)(F).

The United States Court of Appeals for the Ninth Circuit has not explained how these provisions interact, and "[a]ttempting to reconcile the two sections has left district courts in disarray." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009). Courts in this district have taken two approaches. A few have adopted the "total preemption" approach. *See Reaser v. Monterey Fin. Servs., LLC*, No. CV-20-01693-PHX-SPL, 2020 WL 5879523, at *2 (D. Ariz. Oct. 2, 2020); *Shupe v. Cap. One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2017 WL 11112400, at *3 (D. Ariz. Mar. 6, 2017); *Mamboleo v. Wells Fargo Bank NA*, No. CV–14–00648–PHX–DJH, 2015 WL 9691022, at *5 (D. Ariz. Feb. 25, 2015). These courts hold that § 1681t(b)(1)(F) preempts, without exception, all state statutory and common-law claims relating to the responsibilities of furnishers of information. *See Reaser*, 2020 WL 5879523, at *2. Some courts (but none in this district) have characterized this broad preemptive effect as an implied repeal of § 1681h(e). *Gorman*, 584 F.3d at 1167 (citing *Jaramillo v. Experian Info. Sols., Inc.*, 155 F. Supp. 2d 356, 361 (E.D. Pa. 2001)).

The second group agrees, as a starting point, that § 1681t(b)(1)(F) generally preempts all state statutory and common-law claims. *See Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp. 2d 848, 859 (D. Ariz. 2012); *Home Care Servs., Inc. v. Advanta Bank Corp.*, No. 09–CV–2518–PHX–GMS, 2010 WL 11188601, at *5 (D. Ariz. June 15, 2010). However, these courts have concluded that the exception contained in § 1681h(e) remains in effect. *See Loomis*, 912 F. Supp. 2d at 859. So, a plaintiff may bring a claim for defamation, invasion of privacy, or negligence against a furnisher of information, if the claim is based on allegations that the furnisher provided false information to a credit reporting agency with malice or willful intent to injure. *Id.*

The Court agrees with the former approach. Although the Ninth Circuit has not yet

addressed the issue, the Second, Sixth, and Seventh Circuits have. Each agrees that § 1681t(b)(1)(F) preempts all state-law claims, whether based on statute or common law, that come within the scope of § 1681s-2, including those that would otherwise be preserved by § 1681h(e). *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *accord Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011) (per curiam); *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 521–22 (6th Cir. 2019). On the interaction between § 1681t(b)(1)(F) and § 1681h(e), the *Purcell* court explained:

> Unlike [other] judges, we do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a *right* to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same legislation also added § 1681s-2. The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.
>
> Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains.

659 F.3d at 625 (emphasis in original).

The Court finds this reasoning persuasive and therefore limits the analysis to whether Plaintiff's claims fall within the reach of § 1681t(b)(1)(F). This statute preempts any state-law claim that concerns "any subject matter regulated under . . . section 1681s-2

. . . .” Section 1681s-2 imposes two sets of duties on people who furnish information to credit reporting agencies. First, § 1681s-2(a) imposes a general duty “to provide accurate information.” Second, § 1681s-2(b) imposes additional duties when a furnisher is notified of a dispute regarding the accuracy of information provided to a credit reporting agency.

Here, in count one, Plaintiff alleges that U.S. Bank “misrepresented the disputed status of the loan obligation to credit reporting agencies.” (Doc. 27, ¶¶ 55–56.) In count five, Plaintiff alleges that after U.S. Bank received notice of Plaintiff’s dispute, it “continued to misrepresent the status of the loan obligation to . . . third parties, such as credit reporting agencies.” (*Id.* ¶ 99.) In other words, Plaintiff alleges that U.S. Bank reported inaccurate information about him, a consumer, to credit reporting agencies despite having received notice from him that the information was inaccurate. This conduct is expressly prohibited by § 1681s-2(a)(1)(B) and (a)(3). Therefore, count one and count five concern “subject matter regulated under . . . section 1681s-2,” and they are preempted by § 1681t(b)(1)(F).

The Court need not address Plaintiff’s argument that one or both of his claims meet § 1681h(e)’s exception for tort claims involving malice or willful intent to injure. Even if they do, they are still preempted under § 1681t(b)(1)(F). As the Second Circuit observed in *Macpherson*, “the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption.” 665 F.3d at 48.

The Court will recommend that counts one and five be dismissed with prejudice to the extent they are based on allegations that U.S. Bank reported inaccurate information to credit reporting agencies. *See Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 399 (9th Cir. 2002) (remanding with instructions to dismiss with prejudice where the plaintiff’s state-law claim was preempted by federal law). As noted above, Plaintiff also supports these counts with allegations regarding his direct communications with U.S. Bank. These allegations are not preempted because they concern U.S. Bank’s attempts to

collect a debt, not U.S. Bank's responsibilities as a furnisher of information to credit reporting agencies. They are analyzed below.

**B. Sufficiency of the Complaint**

U.S. Bank contends that Plaintiff failed to adequately plead each of the challenged claims. The Court agrees that Plaintiff has not sufficiently pleaded claims for consumer fraud and negligent misrepresentation. However, the Court finds that Plaintiff has stated a claim for intrusion upon seclusion.

**1. Consumer Fraud**

The elements of consumer fraud are "(1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). A loan can constitute "merchandise" for purposes of this claim. *Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781, 783 (Ariz. Ct. App. 1985). "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) (citing *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980)).

U.S. Bank argues that Plaintiff's claim fails because he did not plead that he relied on any misrepresentation made by U.S. Bank. The record supports this argument. In his general allegations, Plaintiff accuses U.S. Bank of threatening "negative credit reporting" and making "offensive comments," but he does not allege that U.S. Bank made a misrepresentation to him, or that he took some action in reliance upon it. (Doc. 27, ¶ 21.) Similarly, in his claim-specific allegations, Plaintiff alleges that U.S. Bank harassed him in connection with the loan, but he does not allege that U.S. Bank made a misrepresentation to him, or that he relied on it. (*Id.* ¶¶ 52–54.) Finally, although Plaintiff alleges that U.S. Bank made misrepresentations about the loan to others, he does not allege that he relied on them in some way. (*Id.* ¶ 55.)

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it

determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Although Plaintiff has amended his complaint once, the Court is not convinced that his claim is uncurable. In a subsequent claim (whose allegations are not incorporated into the consumer fraud claim), Plaintiff alleges that U.S. Bank misrepresented both the status of the loan and his rights under the finance contract. (Doc. 27, ¶¶ 99–100.) Plaintiff can possibly cure his consumer fraud claim by providing details about these misrepresentations and his reliance on them. The Court will recommend that dismissal be with leave to amend.

**2. Negligent Misrepresentation**

The elements of negligent misrepresentation include, among other things, (1) a misrepresentation made by the defendant during a business transaction, (2) intent for the plaintiff to rely on the misrepresentation or knowledge that the plaintiff reasonably would rely on it, and (3) justifiable reliance by the plaintiff. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014) (citing *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 819 P.2d 1003, 1008–09 (Ariz. Ct. App. 1991)). This claim must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *HM Hotel Props. v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 855 (D. Ariz. 2012) (citing *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 988 n.2 (D. Ariz. 2012)).

U.S. Bank argues that Plaintiff's claim fails because he did not plead that U.S. Bank intended for him to rely on any misrepresentation, or that he in fact relied on any misrepresentation. U.S. Bank further argues that Plaintiff has not satisfied the particularity requirement with respect to the allegation that U.S. Bank made a misrepresentation. The record supports these arguments. As an initial matter, Plaintiff did not allege that U.S. Bank made a statement with intent for Plaintiff to rely on it. This omission by itself warrants dismissal. As for whether U.S. Bank made a misrepresentation, Plaintiff alleges only that U.S. Bank threatened "negative credit reporting," made "other offensive comments," "mispresent[ed] the status of the loan," and "misrepresent[ed] to [Plaintiff] his legal rights

under the retail installment contract." (Doc. 27, ¶¶ 21, 99–100.) These general allegations are insufficient to satisfy the particularity requirement. Most noticeably, Plaintiff offers no details about the contents of the misrepresentations. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (affirming dismissal of a fraud claim where the plaintiff failed to allege, among other things, "the specific contents of the misrepresentations").

Next, Plaintiff did not allege that he relied on any misrepresentations. Plaintiff disputes this conclusion, pointing to an allegation that U.S. Bank's telephone calls caused him to feel "confused, harassed and scared and unsure of his legal rights . . . ." (Doc. 27, ¶ 101.) The Court doubts that this is sufficient to plead the reliance element. Establishing reliance typically involves showing that the plaintiff affirmatively acted or refrained from acting as a result of a misrepresentation. *See St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 817 (Ariz. 1987) (stating that the reliance element is satisfied if the misrepresentation "had a material influence upon the plaintiff's conduct or was a substantial factor in bringing about his or her action." (quoting *SEDCO Int'l, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982))). Here, Plaintiff merely describes how U.S. Bank's conduct made him feel; he does not allege that such conduct caused him to do an act or refrain from doing an act.

Dismissal for failing to meet the particularity requirement, like dismissal for failure to state a claim under Rule 12(b)(6), should be with leave to amend "if it appears at all possible that the plaintiff can correct the defect." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (quoting *Balistreri*, 901 F.2d at 701). It is not yet clear that Plaintiff's claim is uncurable. Its primary defect is a lack of detail, so Plaintiff could possibly cure his claim by providing further details about the alleged misrepresentations and his reliance on them. The Court will recommend that dismissal be with leave to amend.

**3. Intrusion Upon Seclusion**

Arizona recognizes "intrusion upon seclusion" as a species of invasion of privacy. *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997). A defendant may be

held liable under this theory if he "'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' and the intrusion is 'highly offensive to a reasonable person.'" *Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 995 (Ariz. Ct. App. 2019) (quoting Restatement (Second) of Torts § 652B). Telephone calls are actionable if they are "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff" and constitute "a substantial burden to his existence." Restatement (Second) of Torts § 652B cmt. d.

Plaintiff alleges that he notified U.S. Bank in January 2020 that he was represented by counsel and that he was disputing the loan as a result of the Sierra's defects. (Doc. 27, ¶ 20.) Despite this notice, U.S. Bank called Plaintiff about the loan "several times" per day, "daily," for "several months." (*Id.* ¶¶ 21, 23, 26.) Calls were made to Plaintiff while he was at work and while he was at home. (*Id.* ¶ 23.) U.S. Bank also "incessantly" called Plaintiff's brother about the loan, although he is not a party to the finance contract. (*Id.* ¶ 24.) In response, Plaintiff notified U.S. Bank that the calls were unwelcome and should be directed to his attorney. (*Id.* ¶ 22.) Plaintiff's attorney also told U.S. Bank to stop calling Plaintiff directly. (*Id.* ¶ 25.) The calls nevertheless continued. (*Id.* ¶ 26.) Additionally, despite having received notice that the loan was in dispute, U.S. Bank threatened Plaintiff with "negative credit reporting" and made "other offensive comments." (*Id.* ¶ 21.)

Taking these allegations as true, a reasonable person could find that U.S. Bank's conduct intruded into Plaintiff's seclusion, and that such conduct was highly offensive. U.S. Bank knew that the debt was disputed, and that Plaintiff was represented by an attorney on the matter. Rather than work with Plaintiff's attorney to resolve the dispute, U.S. Bank embarked on a months-long campaign of harassment to collect from Plaintiff directly. *See Fernandez v. United Acceptance Corp.*, 610 P.2d 461, 463 (Ariz. Ct. App. 1980) (explaining that a creditor may be held liable for invasion of privacy when he uses "unreasonable measures" to collect a debt). U.S. Bank's conduct, which includes an oppressive number of telephone calls carried out against the express instructions of Plaintiff and his attorney, could foreseeably "result in extreme mental anguish,

embarrassment, humiliation or mental suffering and injury to a person possessed of ordinary sensibilities." *Id.* (quoting *Rugg v. McCarty*, 476 P.2d 753, 754 (Colo. 1970)). Such conduct therefore supports a claim for intrusion upon seclusion.

U.S. Bank's arguments to the contrary are unpersuasive. Citing to an allegation that it made "continuing" telephone calls, U.S. Bank contends that there are insufficient allegations about the frequency of the calls. (Doc. 27, ¶ 121.) This argument ignores many of the allegations described above. Again, Plaintiff alleges that the telephone calls occurred several times per day, every day, for several months. (*Id.* ¶¶ 21, 23, 26.) Although it is unclear how many calls U.S. Bank made in total, these allegations make clear that the number is substantial. *See Several*, Black's Law Dictionary (11th ed. 2019) (defining "several" to mean "more than one or two but not a lot"). As no Arizona case clearly delineates the point at which the frequency of telephone calls becomes "hounding" and a "substantial burden," the Court cannot say as a matter of law that several calls per day for several months falls short of that standard. *See Fernandez*, 610 P.2d at 464 (upholding a jury verdict for the plaintiff-debtors based in part on evidence that the defendant-creditor made "a large number of telephone calls").

U.S. Bank also argues that Plaintiff has not alleged facts showing that the content of the telephone calls would be highly offensive to a reasonable person. Even if true, this does not warrant dismissal of Plaintiff's claim. The act of calling Plaintiff repeatedly, knowing that the calls were unwelcome, can support a claim for intrusion upon seclusion regardless of the content of the calls. *See Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 30 F. Supp. 2d 1182, 1191 (D. Ariz. 1998) ("The tort of intruding upon the seclusion of another is aimed at the discomfort caused by the intrusion itself—for example, someone enters your bedroom, opens your mail, or makes repeated and unwanted telephone calls to you." (quoting *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993))). While offensive content during the calls would certainly make a stronger case, it is not necessary to state a claim. Moreover, Plaintiff alleges that U.S. Bank threatened negative credit reporting despite having knowledge that the debt was legitimately disputed. Threats like these, if

made repeatedly, could be found highly offensive.

Next, U.S. Bank argues that the calls to Plaintiff's brother should not be considered because Plaintiff lacks standing to seek relief for injury to his brother. This argument misses the point of Plaintiff's claim. The issue is whether, as to Plaintiff, U.S. Bank's conduct was highly offensive. Undoubtedly, a reasonable person could find it highly offensive and embarrassing for his creditor to publicize his debt to family members or acquaintances. Indeed, the state court in *Fernandez* upheld the verdict in favor of the plaintiff-debtors based in part on evidence that the defendant-creditor made telephone calls to the debtors' neighbors. 610 P.2d at 464.

U.S. Bank also argues that "Plaintiff has not pleaded any facts demonstrating that the alleged calls he received 'intruded into a private place' in order to sustain a claim for intrusion upon seclusion." However, U.S. Bank ignores the second part of that rule statement. A defendant may be held liable "only when he has intruded into a private place, *or* has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B cmt. c (emphasis added). The case law is clear that a creditor can be liable under this standard for using unreasonable measures to collect a debt. *Fernandez*, 610 P.2d at 463. And, as discussed above, the allegations (if true) support a finding that U.S. Bank used unreasonable, highly offensive measures.

Finally, U.S. Bank's citation to *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13–8246–PCT–PGR, 2014 WL 880634 (D. Ariz. Mar. 6, 2014), and *Shupe v. Cap. One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2017 WL 11112432 (D. Ariz. Dec. 22, 2017), are inapposite. In *Baker*, the court dismissed the plaintiff's privacy claim because he failed to "allege in more than a conclusory fashion the frequency or content of the calls or to specify what was highly offensive about them." 2014 WL 880634, at *4. In *Shupe*, the court dismissed the plaintiffs' privacy claim because they alleged only that they received two telephone calls per day for a two-month period, which, according to that court, does not amount to a substantial burden. 2017 WL 11112432, at *2.

Here, Plaintiff provides more detail. He alleges that he received several calls per

day for several months. U.S. Bank was notified in January 2020 that Plaintiff was represented by an attorney. U.S. Bank made threatening calls to Plaintiff anyway. At some point, both Plaintiff and his attorney notified U.S. Bank that the calls to Plaintiff were unwelcome and should be directed to Plaintiff's attorney. U.S. Bank continued to call Plaintiff anyway. U.S. Bank also called Plaintiff's brother about the dispute. Together, these allegations support a claim for intrusion upon seclusion. *See Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1185 (S.D. Cal. 2010) (denying a motion to dismiss the plaintiff-debtors' privacy claim where the defendant-creditor "contacted Plaintiffs' adult daughter regarding the debt" and called the debtors hundreds of times over a seven-month period "despite notification that Plaintiffs were represented by counsel").

Therefore,

**IT IS RECOMMENDED** that Defendant U.S. Bank National Association's motion to dismiss (Doc. 31) be **granted in part** and **denied in part** as follows:

1. To the extent that count one (consumer fraud) and count five (negligent misrepresentation) relate to U.S. Bank's responsibilities as a furnisher of information to credit reporting agencies, it is recommended that these claims be dismissed with prejudice.

2. To the extent count one (consumer fraud) and count five (negligent misrepresentation) relate to misrepresentations made by U.S. Bank during direct communications with Plaintiff, it is recommended that these claims be dismissed without prejudice and with leave to amend.

3. It is recommended that U.S. Bank's motion be denied with respect to count seven (intrusion upon seclusion).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the district court. The parties shall have fourteen days within which to file responses to any objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections to this recommendation may result in the acceptance of the recommendation by the district

court without de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 24th day of November, 2020.

Maria S. Aguilera
Honorable Maria S. Aguilera
United States Magistrate Judge