Christine Anderson Ferraris, #031414
A. FERRARIS LAW, P.L.L.C.
333 N. Wilmot, Suite 340
Tucson, AZ 85711
Tel.:(520) 282-4201
Email: cferraris@aferrarislaw.com

*Counsel for Plaintiff, Sergio V. Fierros*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio V. Fierros,<br><br>                 Plaintiff,<br><br>v.<br><br>Quebedeaux Buick-GMC, Inc.; General Motors, LLC; U.S. Bank National Association,<br><br>                 Defendants. | Case No.: CV-20-00245-TUC-RM-MSA<br><br>**SECOND AMENDED CIVIL COMPLAINT**<br><br>**CONSUMER FRAUD; BREACH OF WARRANTY; BREACH OF CONTRACT; INTRUSION UPON SECLUSION, NEGLIGENT MISREPRESENTATION; LEMON LAW; RESCISSION, FEDERAL TRADE COMMISSION'S RULE ON PRESERVATION OF CONSUMER CLAIMS AND DEFENSES, 16 C.F.R. § 433, TELEPHONE CONSUMER PROTECTION ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

The Plaintiff, Sergio V. Fierros, through A. Ferraris Law, the undersigned counsel, files this Second Amended Complaint to sue Defendants Quebedeaux Buick-GMC, Inc., General Motors, LLC, and U.S. Bank National Association.

## PARTIES, JURISDICTION, & VENUE

1.      Plaintiff Sergio V. Fierros ("Mr. Fierros" or "Plaintiff") is a resident of Pima County, Arizona.

2.      Defendant Quebedeaux Buick-GMC, Inc. ("Quebedeaux Buick-GMC") is an Arizona domiciled for-profit corporation with a principal place of

business in Pima County, Arizona selling, financing, and servicing (repairing and providing maintenance for) automobiles.

3.     Defendant General Motors, LLC also known as GMC ("General Motors"), is a Delaware domiciled for-profit corporation registered with the State of Arizona as a foreign entity, represents it is in the business of manufacturing, selling motor vehicles.

4.     Defendant U.S. Bank National Association ("US Bank") is a foreign for-profit corporation, in the business of auto finance within the State of Arizona; US Bank is the assignee under the retail installment contract for the auto purchase money loan in this matter.

5.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 2310 (d)(3)(B).

6.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 (b)(2), in that the unlawful conduct alleged occurred within the District of Arizona.

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

7.     On May 15, 2019, according to Mr. Fierros, he purchased a new 2019 Sierra GMC, VIN 1GTU9FEL0KZ290140 ("the Sierra") from Defendant Quebedeaux Buick-GMC in Tucson Arizona, for a cash price of $67,634.13 and a total sale price of $86,121.60. (See Retail Installment Agreement attached as Exhibit A, Front and Back).

8.     According to the Retail Installment Agreement issued by Quebedeaux Buick-GMC, Quebedeaux Buick-GMC charged Mr. Fierros the following fees:

- DEALER DOCUMENTARY FEE     $399.00
- GAP                                          $499.00
- FINANCE CHARGES                 $16,560.32

2

9.      Quebedeaux Buick-GMC assigned the finance contract to Defendant US Bank.

10.     Quebedeaux Buick-GMC installs aftermarket equipment in vehicles sold as new.

11.     Quebedeaux did not inform Mr. Fierros it had installed equipment prior to the sale of the Sierra to Mr. Fierros.

12.     A few months after purchase in September 2019 while having a tire replaced, Quebedeaux Buick-GMC informed Mr. Fierros the Sierra was subject to a software update and advised Mr. Fierros to have the update installed.

13.     Shortly after Quebedeaux Buick-GMC performed the software update repair, the Sierra's brakes failed.

14.     Mr. Fierros brought the Sierra back to Quebedeaux Buick-GMC and informed Quebedeaux Buick-GMC that the brakes failed while he was driving.

15.     Quebedeaux Buick-GMC kept the Sierra for about 20 days and drove the Sierra 300 miles to attempt to repair.

16.     Quebedeaux Buick-GMC delivered the Sierra back to Mr. Fierros and after a few weeks the Sierra's brakes failed again causing a collision with another vehicle.

17.     The Sierra was again towed to Quebedeaux Buick-GMC where it remained for about five months.

18.     To mitigate his loss and harm, Mr. Fierros requested a substitute vehicle to drive and Quebedeaux Buick-GMC provided a near equivalent vehicle to Mr. Fierros.

19.     To further mitigate his loss and harm, on or about January 7, 2020, Mr. Fierros, through counsel, sent a letter to inform US Bank, the purchase loan assignee, that Mr. Fierros was represented by counsel, and due to the Sierra's unsafe and defective history, and failed repairs, Mr. Fierros was rescinding the

purchase of the Sierra and disputing his obligation (January 7, 2020 Correspondence).

20.     Shortly thereafter, US Bank counsel, Brian J. Kramer, acknowledged receipt of the January 7, 2020 Correspondence, and Mr. Fierros's counsel exchanged voicemails and emails through the end of January 2020. Though notified that Mr. Fierros was represented by counsel, US Bank began daily to call and harass Mr. Fierros, threatening negative credit reporting and that he must make payments though he was advised to withhold payments and US Bank was informed of the same by Mr. Fierros's lawyer.

21.     US Bank often called several times a day harassing Mr. Fierros and interfered with time with family, and at his work while managing his business.

22.     Between February 5, 2020 and November 2, 2020, US Bank called Mr. Fierros more than 500 times. In June it appears there were at 275 calls long after US Bank received notification that Mr. Fierros was represented by counsel.

23.     When Mr. Fierros was called, he informed the US Bank representative he had legal representation, that he disputed the debt, and asked US Bank to contact his attorney's office and cease calling him.

24.     US Bank representatives told Mr. Fierros that he is the one responsible for the payment, and his attorney had nothing to do with the loan.

25.     Though informed that Mr. Fierros was represented by legal counsel and to stop calling Mr. Fierros, US Bank continued to call Mr. Fierros more than 500 times in the last few months.

26.     US Bank often called several times a day to Mr. Fierros and his family while at home and while he was at work. This conduct caused Mr. Fierros much stress, anxiety, and humiliation.

27.     Based on information and belief, US Bank also called Mr. Fierros's brother, Miguel Cantua, about Mr. Fierros's loan, though he was not a party to the obligation.

28.     Mr. Fierros's anxiety manifested in stress during all times of the day, he lost sleep at night, and was distracted daily due to the stress of the repeated calls and the threats and actual harm to his credit history.

29.     These calls also negatively impacted Mr. Fierros's family and his relationship with his spouse, as the calls were a source of arguments with his wife after many of the calls from US Bank.

30.     On multiple occasions, Mr. Fierros's legal counsel notified US Bank Counsel, Brian Kramer, of the harassing calls and requested they cease.

31.      After acknowledging Mr. Fierros's letter of legal representation and notice of rescission, and after Mr. Fierros and his counsel informed US Bank repeatedly that counsel represented Mr. Fierros, US Bank continued to call and harass Mr. Fierros and his family for several months.

32.     Mr. Fierros lost confidence and trust in his legal counsel, who advised him that US Bank should stop calling because he was represented by legal counsel and because US Bank's legal counsel had been notified of the harassing calls. Mr. Fierros felt that his attorney was ineffective and did not, or could not, do anything to help him stop the harassing calls and the negative inaccurate reports by US Bank to credit reporting agencies. Mr. Fierros, with the January 7, 2020 notification, also informed US Bank he was going to mitigate his loss by stopping payment of the loan, under A.R.S. § 47-2717. A.R.S. § 47-2717 allows a buyer, who has financed his purchase, to self-help by notifying the seller of his intention to do so, and to deduct all or any part of damage resulting from any breach of the contract from any part of the price still due under the same contract.

33.     Mr. Fierros sought to replace the unsafe and defective Sierra but was denied financing. Mr. Fierros was informed by Larry H. Miller the reason he was denied financing was the recent negative reporting by US Bank on his credit history.

34.     Mr. Fierros checked his credit status on the "credit karma" credit monitoring service and found that the dispute with US Bank had diminished his high credit score.

35.     Mr. Fierros also sought a house loan in which he got dissuaded to proceed with the application because his credit rating had gone from very good to poor.

36.     Mr. Fierros stopped applying for other car and house loans.

37.     The diminished credit rating was also a source of arguments between Mr. Fierros and his wife.

38.     In June 2020, Mr. Fierros disputed by letter to credit reporting agencies, TransUnion, Equifax, and Experian, US Bank's failure to report the loan as a disputed debt though US Bank legal counsel had received and acknowledged notice of Mr. Fierros's dispute in January 2020.

39.     Quebedeaux Buick-GMC informed Mr. Fierros on multiple occasions that General Motors would replace the defective Sierra but to date General Motors, LLC has failed to do so.

40.     More recently, General Motors, LLC's inspection agent, ESIS, whose representative inspected the Sierra on two occasions has asserted that Quebedeaux Buick-GMC is responsible for the Sierra's brake failure because Quebedeaux Buick-GMC installed an after-market part onto the Sierra.

41.     Mr. Fierros is unaware of any after-market part installation by Quebedeaux Buick-GMC, and the purchase and finance documents do not indicate that any third-party after-market equipment was purchased or installed.

42.   To date the GMC Sierra 2019 has had several safety recalls, two of which, according to General Motors documents filed with the National Highway Traffic Safety Administration, relate to software failures and brake defects in the Sierra.

43.   Since Mr. Fierros did not possess the GMC Sierra and could no longer purchase a new car at a reasonable interest rate, he rented a car out of pocket from a rental company in March and April 2020, and has incurred other consequential loss related to loss of use of the Sierra and because he could not finance a replacement vehicle.

44.   Consumers around the United States who own a model year 2019 GMC Sierra have filed complaints with the National Highway Traffic Safety Administration stating that they had similar brake failures as experienced by Mr. Fierros.

45.   The diagnostic codes identified in repair orders for Mr. Fierros's Sierra are the same codes identified in GMC records issued to notify NHTSA and dealers of the safety problems and brake failures that Mr. Fierros and other consumers have suffered.

46.   Mr. Fierros and his family have incurred significant harm by each Defendant's conduct, such as loss of use of funds towards a vehicle that is unsafe to drive, emotional stress of continued failure of the brakes while driving and the extended duration waiting for repair or replacement, and General Motors' refusal to replace the Sierra, humiliation and embarrassment because of the effects of US Bank's negative and incomplete reporting with credit reporting agencies, causing negative impact on Mr. Fierros's credit history, emotional distress from US Bank's harassment while represented by counsel, as well as a loss of use of funds and financing which has caused Mr. Fierros and his family tremendous financial hardship.

### CLAIM I - ARIZONA CONSUMER FRAUD ACT
### A.R.S. § 44-1522 to A.R.S. § 44-1534
### As To Defendants Quebedeaux Buick-GMC, Inc.;
### General Motors, LLC; U.S. Bank National Association

47.     Mr. Fierros incorporates the foregoing paragraphs by reference as if fully set out herein.

48.     The Arizona Consumer Fraud Act (ACFA) protects consumers against unfair and deceptive conduct.

> "The term 'deceptive' has been interpreted to include representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible."

*Ward v. Fireman's Fund Ins. Companies*, 731 P.2d 106, 112, 152 Ariz. 211, 217 (Ariz. App. 1986).

49.     Elements to pursue a lawsuit for violation of the Consumer Fraud Act ("Act") are a false promise or a misrepresentation made in connection with the sale or advertisement of merchandise and the consumer's consequent and proximate injury. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).

50.     Misrepresentation, as defined under the Act, may be verbal or written to support a violation of the Consumer Fraud Act. A.R.S.  § 44-1521 (7) defines "Sale", § 44-1521 (5) defines "Merchandise," and A.R.S.  § 44-1521 (1) defines "Advertisement." Each term comes with a broad definition therefore typical usage does not control each term's interpretation under the Act. *Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 68 ¶ ¶34-43, 366 P.3d 117, 127-129 (Ct. App. 2016).  The Court of Appeals in *Villegas,* considered the Act's definitions of "sale," "advertisement," and "merchandise" relative to Defendant Transamerica Financial Services loan agreements and advertising, found that a loan, though not typically considered merchandise, was merchandise under the Act's broad language, and as such, the loan transaction was a sale and advertisement of

merchandise under the Act." *Villegas v. Transamerica Financial Services, Inc.*, 147 Ariz. 100,102-103, 708 P.2d 781,783-784 (Ct. App. 1985).

51.    The Fair Debt Collection Practices Act (FDCPA) expressly states that it does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter. 15 U.S.C. § 1692n.

52.    The ACFA and its protections are not inconsistent with FDCPA protections, therefore a claim based on the ACFA may challenge a party's debt collection practices that are within the scope of the ACFA. *See Gonzalez v. Arrow Fin. Servs., L.L.C.*, 660 F. 3d 1055 (9th Cir. 2011) (A consumer can recover statutory damages under both the FDCPA and California debt collection statute). *Cf. Codar v. Arizona,* 1996 WL 471335 (9th Cir., Aug. 19, 1996) (Arizona debt collector license statute preempted to the extent it was inconsistent with the FDCPA by interfering, essentially preventing, the sending of an FCDPA required notice to in-state debtors).

53.    The Federal Trade Commission (FTC), the federal authority for enforcing prohibitions against unfair and deceptive practices against creditors collecting their own debts, uses the FDCPA as a standard to determine whether a practice is unfair or deceptive. *See* 60 Fed. Reg. 40,263 (Aug. 8, 1995).

54.    The ACFA, under A.R.S. § 44-1522 (C), provides that the court may use interpretations by the FTC as a guide to determine the application of the ACFA to an act or practice challenged as a violation of the ACFA.

9

**Quebedeaux Buick-GMC, Inc.**

55.    Quebedeaux Buick-GMC sold a vehicle, the Sierra, to Mr. Fierros.

56.    Quebedeaux Buick-GMC misrepresented by its written and verbal advertisements the condition of the Sierra.

57.    Quebedeaux Buick-GMC concealed it had installed after-market equipment and made alterations to the Sierra.

58.    Quebedeaux Buick-GMC's made misrepresentations relative to the attempted repairs of the Sierra that did not repair the brake failure defects.

**General Motors, LLC**

59.    General Motors misrepresented by its written and verbal advertisements the condition of the Sierra.

60.    General Motors was aware of the Sierra's safety defects prior to Mr. Fierros's purchase of the Sierra.

61.    General Motors concealed and failed to disclose the Sierra's safety defects in a timely manner prior to and after the purchase of the Sierra.

62.    General Motors concealed known information relative to its inspection of the Sierra and represented it would share the inspection but has failed to do so.

**U.S. Bank National Association**

63.    After being informed he was represented by counsel, US Bank continued to contact Mr. Fierros in connection with Mr. Fierros's purchase of the Sierra.

64.    US Bank called Mr. Fierros at least 500 times, though notified that Mr. Fierros was represented by counsel and US Bank should cease contacting him directly.

65.    Upon information and belief, US Bank utilized an autodialing system to contact Mr. Fierros.  The extreme frequency of the calls, often involving

delays and artificial sounding voices, indicated that an automated dialing system was being used.

66.    US Bank repeatedly harassed Mr. Fierros by calling him incessantly at all hours of the day; such conduct was in connection with Mr. Fierros's purchase of the Sierra.

67.    US Bank's continued pattern of calling Mr. Fierros at all hours despite his express instructions that he not be called is exactly the type of conduct that congress enacted the Telephone Consumer Protection Act to address and punish.

68.    US Bank, after acknowledging Mr. Fierros was represented by counsel, willfully interfered with Mr. Fierros's legal rights and protections; such conduct was in connection with Mr. Fierros's purchase of the Sierra.

69.    Though Mr. Fierros through counsel informed US Bank of his dispute of the loan in January 2020, US Bank subsequently misrepresented to Mr. Fierros that he must pay the disputed status of the loan though this was contrary to the guidance of Mr. Fierros's counsel as provided in the notice to U.S. Bank in January 2020.

70.    US Bank was informed that the debt was disputed yet still called Mr. Fierros more than 500 times to harass and misrepresent his legal obligations and the status of the loan.

71.    In June 2020, Mr. Fierros disputed US Bank's inaccurate reporting with credit reporting agencies, Equifax, Experian and TransUnion, which provided US Bank with additional notice of his dispute of the loan.

72.    Mr. Fierros and his family have incurred significant harm by each Defendant's conduct such as loss of use of funds towards a vehicle that that is unsafe to drive, emotional stress of continued failure of the brakes while driving and the extended duration waiting for repair or replacement, confusion,

frustration, humiliation and embarrassment because of the effects of US Bank's continued harassment and reporting of the loan and interference with representation by legal counsel, as well as a loss of use of funds and financing which has caused Mr. Fierros and his family tremendous financial hardship.

73.     The injuries suffered by Mr. Fierros as a result of US Bank's incessant, automated calls are exactly the type of injuries that the TCPA was enacted to redress by making each such violation redressable by $500 - $1500 statutory damages per call.

74.     Upon information and belief, US Bank has been sued repeatedly under the TCPA, including on a class basis, for the very type of illegal conduct alleged in this case.

75.     US Bank has a history of defrauding and abusing its customers. It has been the subject of multi-million dollar enforcement actions by federal agencies due to its abuse of its customers, including but not limited to defrauding its customers by billing for services it did not provide, failing to oversee its third party vendors, and illegally charging its customers fees and interest.

76.     Under the Arizona Consumer Fraud Act, Mr. Fierros is entitled to recover from each Defendant actual damages and punitive damages. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326 (1986). Punitive damages are appropriate where a defendant's wrongful conduct was guided by willful or wanton disregard of the interests of others. *Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 180, 883 P.2d 407, 41 (App. 1993). An act is willful where the resulting injury is intentional or the natural or probable consequence of the act. *Conchin v. El Paso & S.W.R. Co.,* 13 Ariz. 259, 264, 108 P. 260, 262 (Ariz. Terr. 1910). Courts have justified awarding punitive damages to help consumers enforce consumer protections by helping to reimburse the cost of litigation. *Linthicum* at 330.

77.     As to this count, Mr. Fierros incorporates the following paragraphs

to further cure his first amended complaint as outlined in Arizona District Court's Recommendation Report (Recc. Rep. 8, Doc. # 41):

    i. Though a necessary element in a common law fraud action, reliance is not essential to a statutory fraud action in Arizona. *Peery v. Hansen*, 120 Ariz. 266, 270, 585 P.2d 574, 578 (Ct. App. 1978).

    ii. US Bank called Mr. Fierros 500 times without his consent.

    iii. When Mr. Fierros told US Bank that a counsel represents him in this matter and that US Bank should contact the attorney and no longer contact him, US Bank stated that he bears sole responsibility for the loan and his attorney had nothing to do with this matter.

    iv. US Bank misrepresented Mr. Fierros's loan status as delinquent to credit reporting agencies such as Experian, Equifax, and TransUnion.

    v. This misreporting induced Mr. Fierros's extreme frustration, anxiety, and humiliation.

    vi. Mr. Fierros relied on US Bank's credit misreporting and lost trust in his attorney. This conduct interfered with the attorney-client relationship as Mr. Fierros felt that his attorney did not, or could not, do anything to help him.

    vii. Mr. Fierros relied on US Bank's misreporting, got discouraged, and refrained from applying for new car and house loans because his credit took a hit, and he could no longer obtain a new car or a new house at a reasonable interest rate.

    viii. As a result of this misreporting, Mr. Fierros could not obtain a new car at a reasonable interest rate and suffered monetary

loss by renting a vehicle from a rental company for two months.

ix. This misreporting negatively affected Mr. Fierros's marriage as Mr. Fierros and his wife engaged in constant arguments over financial matters. Mr. Fierros and his wife searched to purchase a new house but could no longer obtain a loan for it due to US Bank's credit misreporting and its adverse effect on Mr. Fierros's credit score.

### CLAIM II - NEW MOTOR VEHICLE WARRANTY "LEMON LAW" CLAIM
### ARIZ. REV. STAT. §§ 44-1261 to 44-1263
### As to General Motors LLC

78.   Mr. Fierros incorporates the foregoing paragraphs by reference as if fully set out herein.

79.   Mr. Fierros is a "consumer" as defined by the Lemon Law, A.R.S. § 44-1261 (A)(1).

80.   Mr. Fierros hereby sues General Motors LLC (General Motors) under the Arizona Lemon Law, A.R.S. §§ 44-1261 to 44-1263.

81.   The Sierra is a motor vehicle as defined by the Arizona Lemon Law, A.R.S. § 44-1261 (A)(2).

82.   General Motors is a manufacturer covered by the Arizona Lemon Law.

83.   General Motors provided with the Sierra an express warranty covered by the Arizona Lemon Law.

84.   The Sierra does not conform to all applicable warranties— specifically, General Motors is unable to cure the defects with respect to the Sierra.

14

85.    Mr. Fierros reported the nonconformities to General Motors directly and via its warranty agent, Defendant Quebedeaux Buick-GMC, an authorized General Motors dealer during the term of the express warranty.

86.    General Motors by its warranty agent Quebedeaux Buick-GMC failed to make the repairs that are necessary to conform the Sierra to such express warranties after more than a reasonable number of attempts.

87.    The nonconformities substantially impair the use and value of the Sierra to Mr. Fierros.

88.    General Motors is obligated to accept return of the Sierra and refund the full purchase price, including all collateral charges, less a reasonable allowance for use.

89.    Mr. Fierros has suffered damages as a result of General Motors and is entitled to recover his damages in an amount to be determined at trial.

90.    Pursuant to A.R.S. § 44-1265 (B), Mr. Fierros is also entitled to recover his reasonable attorney's fees and costs.

## CLAIM III- BREACH OF IMPLIED WARRANTIES
### A.R.S. §§ 44-1267, 47-2315
### As to Quebedeaux Buick-GMC, Inc., and General Motors LLC

91.    Mr. Fierros incorporates by reference the foregoing paragraphs as if fully set out herein.

92.    The Uniform Commercial Code (UCC) as adopted by the State of Arizona provides for an implied warranty of merchantability for the sale of used motor vehicles pursuant to A.R.S. § 44-1267.

93.    Under A.R.S. § 44-1267, a motor vehicle must function in a safe condition as provided in title 28, chapter 3, article 16 of the UCC and be substantially free of any defect that significantly limits the use of the motor vehicle for the ordinary purpose of transportation on any public highway.

94.    By A.R.S. § 47-2315, where the seller at the time of contracting has

15

reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified as required under A.R.S. 47-2316 an implied warranty that the goods shall be fit for such purpose.

95.   Here, Defendant Quebedeaux Buick-GMC and General Motors failed to select and furnish suitable goods to Mr. Fierros and did not properly exclude or modify such implied warranty as described above.

96.   Failure to honor these implied warranties that attached to the sale, combined with the affirmations of facts, and promises relative to the warranties, became part of the basis of the bargain of the Agreement.

97.   Defendant Quebedeaux Buick-GMC and General Motors' respective representations such as those described herein create additional express warranties that the Sierra shall conform to the affirmation, promise and representation made, such as that it was a like-new vehicle to be driven on public highways.

98.   As described, the Sierra did not conform to express and implied warranties of merchantability, and fitness for a particular purpose.

99.   As a result of Defendant Quebedeaux Buick-GMC and General Motors' violation of Arizona implied warranty law as described above, Mr. Fierros was harmed in an amount not less than $50,000.

100.   Because of Defendants' violations of implied warranty statutes, Mr. Fierros is entitled to recover from each Defendant actual damages, punitive damages, and attorneys' fees and costs.

**CLAIM IV- MAGNUSON MOSS WARRANTY ACT**
**Federal Consumer Product Warranties Act, 15 U.S.C. § 2301**
**As to Quebedeaux Buick-GMC, Inc. and General Motors LLC**

101.   The Magnuson Moss Warranty Act, Federal Consumer Product Warranties Act, 15 U.S.C. § 2301, et seq., ("MMWA") provides additional

protections to consumers along with those given under state warranty statutes.

102.   The Magnuson-Moss Warranty Act, a federal statute that supplements actions and remedies for enforcing state warranty laws, also provides that a consumer can seek to recover reasonable attorneys' fees and costs, where a consumer proves that a deceptive warranty was made or where any person fails to comply with the Act's provisions.

103.   Breach of Arizona warranty statutes, in turn, violates the MMWA, allowing Mr. Fierros to recover losses due to violation of warranty statutes and MMWA pursuant to 15 U.S.C. § 2310(d)(1) and 15 U.S.C. § 2310(d)(2) of the MMWA.

104.   As a result of violations by Defendant Quebedeaux Buick-GMC and General Motors of Arizona implied warranty law as described above, Mr. Fierros was harmed in an amount not less than $50,000.

105.   Under the MMWA for Defendants' violations of Arizona implied warranty statutes, Mr. Fierros is entitled to recover actual damages, and attorneys' fees and costs, as well as injunctive relief.

### CLAIM V- NEGLIGENT MISREPRESENTATION
### Quebedeaux Buick-GMC, Inc., General Motors LLC, U.S. Bank National Association

106.   Mr. Fierros incorporates by reference the foregoing paragraphs as if fully set out herein.

107.   Arizona recognizes the law of negligent misrepresentation where information is supplied with a commercial transaction. *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 154 Ariz. 417, 423 (Ct. App. 1991).

108.   A claim for negligent misrepresentation arises when the provider, usually a seller, has a pecuniary interest and information is provided during seller's business. A seller of merchandise must exercise reasonable care and

competence when a seller provides information to a purchaser intending for the purchaser to rely on the information found to be false, causing purchaser to incur damages when the false information was justifiably relied upon. *Id.* The false information can be a misrepresentation, or an omission of fact. *McAlister v. Citibank (Arizona),* 171 Ariz. 2017, 215 (Ct. App. 1992).

**Quebedeaux Buick-GMC, Inc.**

109.   Quebedeaux Buick-GMC negligently sold a vehicle, the Sierra, to Mr. Fierros.

110.   Quebedeaux Buick-GMC negligently misrepresented by its written and verbal advertisements the condition of the Sierra.

111.   Quebedeaux Buick-GMC negligently concealed it had installed after-market equipment and otherwise made alterations to the Sierra.

112.   Quebedeaux Buick-GMC made negligent misrepresentations relative to the attempted repairs of the Sierra that did not repair the brake failure defects.

**General Motors LLC**

113.   General Motors negligently misrepresented by its written and verbal advertisements the condition of the Sierra.

114.   General Motors was aware of the Sierra's safety defects prior to Mr. Fierros's purchase of the Sierra.

115.   General Motors negligently concealed and failed to disclose the Sierra's safety defects in a timely manner prior to and after the purchase of the Sierra.

116.   General Motors negligently concealed known information relative to its inspection of the Sierra and negligently represented it would share the inspection but has failed to do so.

117.   As a result of General Motors conduct, Mr. Fierros was further

1   harmed in that he did not know who was responsible for the Sierra's brake failure

2   so he could seek remedy, and was without a vehicle for several months waiting for

3   General Motors to provide the results of their inspection.

4       118.   Mr. Fierros was harmed economically by the loss of use and non-

5   economically by the fear and frustration of having purchased and financed a

6   vehicle that was too dangerous to drive.

7   **U.S. Bank National Association**

8   **Unauthorized Direct Communications to Mr. Fierros**

9       119.   After Mr. Fierros informed US Bank that he had disputed the loan,

10  directly and by written disputes with credit reporting agencies, US Bank

11  negligently continued to misrepresent the status of the loan obligation to Mr.

12  Fierros and third parties, such as credit reporting agencies, Experian, Equifax,

13  and TransUnion, and to Mr. Fierros's brother.

14      120.   US Bank has repeatedly negligently harassed Mr. Fierros by

15  incessantly calling and negligently misrepresenting his legal rights under the

16  retail installment contract, despite that US Bank had been informed multiple

17  times that Mr. Fierros was represented by counsel.

18      121.   Mr. Fierros was confused, harassed and unsure of his legal rights

19  given conflicting information received from US Bank.

20      122.   Consequential and out-of-pocket losses are recoverable under a

21  negligent misrepresentation claim. Recoverable loss is all damage the Mr. Fierros

22  incurred, including the difference in the value of what was received in the

23  transaction and the purchase price, and pecuniary loss suffered because of

24  reliance on the misrepresentation (s). *Standard Chtd. PLC v. Price Waterhouse,*

25  190 Ariz. 6, 35 (Ct. App. 1996).

26      123.   Mr. Fierros seeks to recover all the pecuniary loss and other harm

27  he incurred because of reliance on Defendants' misrepresentations.

28                                      19

124.   As to this count, Mr. Fierros incorporates the following paragraphs to cure his first amended complaint as outlined in Arizona District Court Recommendation Report (Recc. & Rep. Doc.# 41):

125.   US Bank called Mr. Fierros after US Bank acknowledged by letter and email that Mr. Fierros was represented and that US Bank should not contact Mr. Fierros.

126.   US Bank called Mr. Fierros more than 500 times, after being notified several times by counsel and Mr. Fierros that Mr. Fierros is represented by counsel and that US Bank should cease contacting him directly.

127.   When Mr. Fierros informed US Bank that he had legal representation and to call his attorney, US Bank refused to contact Mr. Fierros's attorney and continued to repeatedly call Mr. Fierros and demand payment for the loan he had formally disputed through his lawyer and this lawsuit.

128.   During the calls US Bank threatened Mr. Fierros with harm to Mr. Fierros's good credit history.

129.   US Bank further harassed Mr. Fierros by misrepresenting that he bears sole responsibility for the loan and his attorney has nothing to do with the matter.

a. Mr. Fierros relied on US Bank's misrepresentation that his debt is past due, and his credit will be jeopardized, and suffered extreme frustration, anxiety, and humiliation. He also lost sleep on countless nights due to US Bank's unauthorized direct communications.

130.   Mr. Fierros relied on US Bank's misrepresentation that his attorney had nothing to do with the matter and lost trust in his attorney. This conduct interfered with the attorney-client relationship as Mr. Fierros felt his attorney did not, or could not, do anything to help him.

131.   Because of US Bank's misreporting, Mr. Fierros tried but was

20

1 unable to obtain new car or new house financing at the reasonable interest rates
2 he had been offered prior to US Bank's misreporting of the loan.

3     132.   As a result of this misreporting, Mr. Fierros could not obtain a new
4 car at a reasonable interest rate and had to rent a vehicle from a rental company
5 for two months.

6     133.   This misreporting negatively affected Mr. Fierros's marriage as Mr.
7 Fierros and his wife engaged in constant arguments over financial matters. Mr.
8 Fierros and his wife searched to purchase a new house but could no longer obtain
9 a loan for it due to US Bank's credit misreporting and its adverse effect on Mr.
10 Fierros's credit score.

### Claim VI - NEW MOTOR VEHICLE WARRANTY "LEMON LAW" CLAIM
### A.R.S. § 44-1261 to § 44-1263
### As to Quebedeaux Buick-GMC, Inc. and General Motors LLC

14     134.   Mr. Fierros incorporates by reference the foregoing paragraphs as
15 if fully set out herein.

16     135.   Mr. Fierros hereby sues Quebedeaux Buick-GMC and General
17 Motors LLC under the Arizona Lemon Law, A.R.S. §§ 44-1261 to 44-1261(A)(1).

18     136.   Mr. Fierros is a "consumer" as defined by the Lemon Law, A.R.S. §
19 44-1261(A)(1).

20     137.   The Sierra is a motor vehicle as defined by the Lemon Law, A.R.S.
21 § 44-1261(A)(2).

22     138.   Quebedeaux Buick-GMC and General Motors are manufacturers
23 covered by the Lemon Law.

24     139.   Quebedeaux Buick-GMC and General Motors provided with the
25 Sierra an express warranty covered by the Lemon Law.

140.    The Sierra does not conform to all applicable warranties – specifically, Quebedeaux Buick-GMC and General Motors are unable to cure the defects with respect to the Sierra.

141.    As a result of the above facts, Quebedeaux Buick-GMC and General Motors breached their warranties with respect to the Sierra.

142.    Mr. Fierros reported the nonconformities to Quebedeaux Buick-GMC and General Motors and their authorized dealers failed to make the repairs that are necessary to conform the Sierra to such express warranties after more than a reasonable number of attempts.

143.    The nonconformities substantially impair the use and value of the Sierra to Mr. Fierros.

144.    Quebedeaux Buick-GMC and General Motors are obligated to accept return of the Sierra and refund the full purchase price, including all collateral charges, less a reasonable allowance for use.

145.    Mr. Fierros suffered damages as a result of Quebedeaux Buick-GMC, General Motors and US Bank and is entitled to recover his damages in an amount to be determined at trial.

146.    Pursuant to A.R.S. § 44-1265(B), Mr. Fierros is entitled to recover his reasonable attorney's fees and costs.

**CLAIM VII -INTRUSION ON THE RIGHT TO SECLUSION**
**U.S. Bank National Association**

147.    Mr. Fierros incorporates by reference the foregoing paragraphs as if fully set out herein.

148.    Mr. Fierros has rights under Arizona law that prohibit intrusion on his privacy.

149.    US Bank intruded on Mr. Fierros's rights to seclusion by systematic and continuous offensive calls to Mr. Fierros and his brother though Mr. Fierros

requested US Bank to cease, and though he informed US Bank that he was represented by counsel, and that he had disputed the loan assigned to US Bank because of the unsafe vehicle.

150.    US Bank's intrusion is without, or in excess of, any privilege.

151.    US Bank called Mr. Fierros more than 500 times without his consent.

152.    US Bank's willfulness of its intrusion was demonstrated by continuing incessant calls after US Bank was informed on multiple occasions that Mr. Fierros was represented by counsel, and where US Bank was informed of representation and later was asked in writing by Mr. Fierros's counsel to cease contacting Mr. Fierros.

153.    US Bank's intrusion on Mr. Fierros's right to seclusion caused Mr. Fierros harm daily by way of interfering with both his work and his personal time, causing Mr. Fierros to suffer from more stress from confusion, frustration, humiliation and embarrassment because of US Bank's conduct described herein.

### CLAIM VIII - TELEPHONE CONSUMER PROTECTION ACT
#### U.S. Bank National Association

154.    Mr. Fierros incorporates by reference the foregoing paragraphs as if fully set out herein.

155.    Telephone lines are part of an aggregate interstate system, and US Congress may regulate conduct regarding unwanted telephone calls.

156.    TCPA regulates both telemarketing and debt collection calls.

157.    Mr. Fierros holds rights under the Telephone Consumer Protection Act ("TCPA") that prohibit Defendant from contacting him without his consent.

158.    Consumers can revoke consent to receive calls orally or in writing. A valid revocation may be accomplished via a consumer-initiated call, direct response to a call initiated by the calling party, or at an in-store bill payment

1   location.

2   159.   Mr. Fierros may revoke consent by making a clear statement

3   expressing his desire not to receive further calls from the caller.

4   160.   A valid revocation is also accomplished when a law firm sends a

5   letter to the creditor stating that it represents an alleged debtor and that all calls

6   regarding the debt should be directed to the law firm.

7   161.   Callers have a duty and continuing responsibility to check the

8   records' accuracy to assure that they do not call mobile numbers inadvertently.

9   162.   Mr. Fierros informed US Bank on multiple occasions that he had

10   disputed the loan assigned to US Bank because the vehicle was unsafe.

11   163.   Mr. Fierros revoked consent to receive calls from US Bank by

12   informing them on multiple occasions that counsel represents him, and that US

13   Bank should not contact him any further.

14   164.   Mr. Fierros's counsel submitted a letter to US Bank, amplifying the

15   fact that counsel represents Mr. Fierros, and that US Bank must cease contacting

16   Mr. Fierros.

17   165.   Dismissing all these notices, US Bank continued calling Mr. Fierros

18   more than 500 times.

19   166.   US Bank continued to contact Mr. Fierros and thus violated TCPA

20   by making live, autodialed, or prerecorded calls to Mr. Fierros's personal cell

21   phone, landline, and other sensitive numbers without Mr. Fierros's prior express

22   consent to collect debt, despite receiving a cease-and-desist letter from Mr.

23   Fierros's counsel.

**RESCISSION**
**As to Quebedeaux Buick-GMC, Inc. and**
**U.S. Bank National Association**

24
25
26

27   167.   Mr. Fierros incorporates by reference the foregoing paragraphs as

28   if fully set out herein.

24

168.    Because Quebedeaux Buick-GMC violated Arizona law by employing fraud and violation of warranty statutes by which resulted in the sale of an unmerchantable and nonconforming vehicle since the day of delivery, the purchase agreement is voidable at Mr. Fierros's option.

169.    Mr. Fierros was reasonably induced by misrepresentations to accept the Sierra and did not discover the extent of defects and nonconformities until after purchase.

170.    In Arizona, where fraud is part of a transaction, a party may cancel the contract and seek return of the purchase price paid, and also recover incidental and consequential damages incurred by seller's breach of the transaction's contract. *Mobile Home Sales Management, Inc. v. Brown,* 115 Ariz. 11, 13-14, 562 P.2d 1378, 1380-81 (Ct. App. 1977). Arizona Revised Statutes §§47-2714, 47-2715.

**FEDERAL TRADE COMMISSION'S RULE ON PRESERVATION OF CONSUMER CLAIMS AND DEFENSES, 16 C.F.R. § 433**
**As to U.S. Bank National Association**

171.    Mr. Fierros incorporates by reference the foregoing paragraphs as if fully set out herein.

172.    In accordance with the requirements of the Federal Trade Commission's Rule on Preservation of Consumer Claims and Defenses, 16 C.F.R. § 433, the Retail Installment Contract which Quebedeaux Buick-GMC assigned to US Bank (Retail Installment Contract) provides in pertinent part:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

173.   By the above Retail Installment Contract provision Mr. Fierros asserts all claims and defenses he has against Quebedeaux Buick-GMC, against US Bank.

174.   As Mr. Fierros is entitled to damages, fees, costs or other equitable relief against Quebedeaux Buick-GMC, he requests all appropriate relief against US Bank.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Fierros demands trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Fierros prays that this Court enter Judgment in his favor and against Quebedeaux Buick-GMC, General Motors LLC, and U.S. Bank National Association as follows:

A.   An award of actual damages including any compensatory, incidental, or consequential damages commensurate with proof at trial for the acts complained of herein;

B.   Appropriate injunctive relief finding that Mr. Fierros can rescind the purchase agreement;

C.   For pre- and post-judgment interest on any amounts awarded herein at the maximum lawful rate from the date of its rendition until paid in full;

D.   For costs, interest and actual reasonable attorneys' fees;

1    E.    Any and all equitable relief and such other and further relief as this

2  Court deems just and proper.

3        RESPECTFULLY SUBMITTED this 17th day of March, 2021.

4

5            **A. FERRARIS LAW, P.L.L.C.**

6

7            */s/ Christine Anderson Ferraris*

8            Christine Anderson Ferraris
             *Attorney for Mr. Sergio V. Fierros*

9

10

11 The foregoing Second Amended Civil Complaint was served this 17th day of
   March, 2021, by filing with the court's CM/ECF system, which shall serve the
12 following counsel of record by Notice of Electronic Filing (NEF):

13 Steven E. Harrison
   BUNTROCK HARRISON & GARDNER LAW, PLLC
14 2158 North Gilbert Road, Suite 119
   Mesa, AZ 85203
15 steve@bhglaw.com
   *Attorneys for Defendant Quebedeaux Buick-GMC, Inc.*
16 *And Defendant US Bank National Association*

17 Kristine L. Gallardo
   SNELL & WILMER L.L.P.
18 One Arizona Center
   400 E. Van Buren, Suite 1900
19 Phoenix, AZ 85004-2202
   kgallardo@swlaw.com
20 *Attorneys for Defendant General Motors LLC*

21 */s/ Linda Vaubel*

22

23

24

25

26

27

28
        27